# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KATY M. KELSO, | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
| v. | )   Case No. CIV-11-191-RAW-SPS |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
|       Defendant. | ) |

## REPORT AND RECOMMENDATION

The claimant Katy M. Kelso requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision should be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1]Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born October 29, 1952, and was fifty-six years old at the time of the administrative hearing. (Tr. 29, 95). She graduated high school (Tr. 122), and has worked as a machine packager (Tr. 148). The claimant alleges inability to work since February 1, 1998 due to multiple sclerosis, obesity, and memory problems. (Tr. 114).

## Procedural History

On July 23, 2008, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Her application was denied. ALJ Osly F. Deramus conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated March 30, 2010. (Tr. 17-24). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b), *i. e.*, she could lift/carry 20 pounds occasionally and 10 pounds frequently, and stand/walk/sit for 6 hours in an 8-hour workday. (Tr. 21). The ALJ concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled between February 1, 1998 and

December 31, 2003 (the relevant insured period) under Rule 202.14 of the Medical-Vocational Guidelines, *i. e.*, "the Grids." (Tr. 17).

**Review**

The claimant contends that the ALJ erred: (i) by improperly assessing the opinions of her treating physicians, Drs. Keith Simmons and John Jennings; (ii) by improperly evaluating her credibility; and (iii) by improperly finding that there was other work she could do when he failed to properly account for her obesity. The undersigned Magistrate Judge finds that this case should be reversed because the ALJ improperly evaluated both her severe impairment of obesity and her credibility.

The claimant had the severe impairment of obesity. (Tr. 19). In 1995, Dr. Keith Simmons examined the claimant for possible MS, but ordered further testing and concluded on November 29, 1995 that it was unlikely the claimant had MS. (Tr. 166, 171). Dr. Simmons noted that the claimant's episodic dizziness, vertigo, and disequilibrium were of unclear etiology, but that the symptoms were "suggestive of an inner ear abnormality or possibly benign positional v. Meniere disease." (Tr. 171). In January 1996, Dr. Simmons saw the claimant for a follow-up examination, again stated that there was no evidence to support MS, and referred her to Dr. John Jennings for further evaluation of ear pain, frequent infections, and intermittent fever. (Tr. 172-173). A March 4, 1996 MRI gave the impression that the claimant had sinus disease. (Tr. 161). On June 26, 2000, the claimant underwent removal of an entrapped gastric band due to tenacious adherence of the stomach to the posterior abdominal wall. At that time, the surgeon noted that the claimant had undergone gastric segmentation in 1988 when she

-4-

weighed 279 pounds, that her lowest weight attained was 179 pounds, and that in June 2000 she weighed 315 pounds. (Tr. 219). Dr. Donald Wikoff treated the claimant in May 2002 for complaints of low back pain and marked difficulty with stress urinary incontinence, and also noted her obesity. (Tr. 156). Dr. Wikoff's impression was that the claimant had bilateral back pain with known right ureterovesical calculus, morbid obesity, and hematuria. (Tr. 156). At a follow-up examination, Dr. Wikoff advised the claimant to increase her fluid intake, that he believed her pain was musculoskeletal in origin, and that she was at great risk for such pain given her obesity. (Tr. 157). In 2003, Dr. Rafael J. Marrero treated the claimant, noting that she had laryngitis and GERD and that he wanted to recheck her for MS if she was not better. (Tr. 239).

On September 23, 2008, a state reviewing physician found that the claimant could do light work, noting that there was no concrete evidence to support a finding of MS. (Tr. 305). On November 9, 2009, Dr. Arthur Briggs completed a Medical Interrogatory of the claimant's physical impairments. He indicated that there was not a sufficient amount of medical evidence to form an opinion about the nature and severity of the claimant's impairments because he only had records from May 2002, but found that the evidence demonstrated the impairments of morbid obesity, renal stones, and vertigo. (Tr. 315). He opined that none of her impairments met a listing and recommended an RFC of light work largely based on the lack of available records. (Tr. 316-317).

At the administrative hearing, the claimant testified that her weight was approximately 386 pounds and that she had not gained weight in the last year. (Tr. 31). As to her physical impairments, she stated that she began having symptoms similar to

multiple sclerosis (MS) in 1995, such as dizziness, fatigue, and double vision with things less than an arm's length away, but that she kept working until 1998 when she also began experiencing left side weakness. (Tr. 33-35). She further stated that she had tried to obtain a second stomach banding, but was unable to because she had "adhesions" on her chest or abdomen. (Tr. 36).

The effects of obesity must be considered throughout the sequential evaluation process. *See* Soc. Sec. Rul. 02-1p, 2000 WL 628049 at *1 (Sept. 12, 2002). The Listing of Impairments as to the Musculoskeletal System references obesity and explains that "[t]he combined effects of obesity with musculoskeletal impairments can be greater than the effects of each of the impairments considered separately." The ALJ "must consider any additional and cumulative effects of obesity" when assessing an individual's RFC. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A, 1.00 Musculoskeletal System. However, "[o]besity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment." Soc. Sec. Rul. 02-1p, 2000 WL 628049, at *6  The Court will therefore not make "[a]ssumptions about the severity or functional effects of obesity combined with other impairments," and "will evaluate each case based on the information in the case record." *Id.*

The ALJ found at step two that the claimant's obesity was a severe impairment, and noted that she had a number of other alleged impairments including dizziness, vertigo, MS (unsupported by medical evidence), a 4 cm hernia, and GERD. (Tr. 20). But at step four the ALJ did not consider the effects of the claimant's obesity on her other non-severe impairments or her ability to perform work. At step four, the ALJ appears to

have adopted in its entirety Dr. Briggs's RFC Assessment which largely discussed the paucity of evidence and recommended an RFC of light work. (Tr. 23, 315-317). As relevant, the ALJ recited the claimant's hearing testimony as to her height and weight, that her symptoms began in 1995 and continued until she stopped working in 1998, and that her symptoms included dizziness, fatigue, double vision up close, and occasional left-sided weakness. (Tr. 14-16). Although the ALJ referred to Social Security Ruling 02-1p at step three in stating that the claimant did not meet a listing, at step four the ALJ did not mention it and instead merely summarized the medical evidence, noted that no physician had labeled the claimant as disabled, and adopted the state reviewing physicians' opinions that the claimant could do light work. The ALJ thus failed to convey that he had considered whether any of the medical evidence demonstrated any additional and cumulative effects. *See, e. g., Fleetwood v. Barnhart*, 211 Fed. Appx. 736, 741-742 (10th Cir. 2007) (noting that "obesity is [a] medically determinable impairment that [the] ALJ must consider in evaluating disability; that [the] combined effect of obesity with other impairments can be greater than effects of each single impairment considered individually; and that obesity must be considered when assessing RFC."), *citing* Soc. Sec. Rul. 02-01p, 2000 WL 628049, at *1, *5-*6, *7; *Baker v. Barnhart*, 84 Fed. Appx. 10, 14 (10th Cir. 2003) (noting that the agency's ruling in Soc. Sec. Rul. 02-01p on obesity applies at all steps of the evaluation sequence). Instead, he simply adopted wholesale the RFC prepared by the State reviewing physician. *Hamby v. Astrue*, 260 Fed. Appx. 108, 112 (10th Cir. 2008) (discussing requirements of SSR 02-01 and finding that "the ALJ provided no discussion of the effect of obesity on Ms. Hamby's other severe

impairments.") [unpublished opinion]. *See also DeWitt v. Astrue*, 381 Fed. Appx. 782, 785 (10th Cir. 2010) ("The Commissioner argues that the ALJ adequately considered the functional impacts of DeWitt's obesity, given that the ALJ's decision recognizes she is obese and ultimately limits her to sedentary work with certain restrictions. But there is nothing in the decision indicating how or whether her obesity influenced the ALJ in setting those restrictions. Rather it appears that the ALJ's RFC assessment was based on 'assumptions about the severity or functional effects of [DeWitt's] obesity combined with [her] other impairments' – a process forbidden by SSR 02-1p.").

Additionally, the ALJ erred in his credibility determination. Deference is generally given to an ALJ's credibility determination, unless there is an indication that the ALJ misread the medical evidence taken as a whole. *See Casias*, 933 F.2d at 801. In assessing a claimant's complaints of pain, an ALJ may disregard a claimant's subjective complaints if unsupported by any clinical findings. *See Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987). But credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [quotation omitted]. A credibility analysis "must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'" *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4 (July 2, 1996).

First, the ALJ referenced but did not discuss the credibility factors set forth in Social Security Ruling 96-7p and 20 C.F.R. § 416.929, and further failed to apply them to

the evidence.[2] He was not required to perform a "formalistic factor-by-factor recitation of the evidence[,]" *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000), but "simply 'recit[ing] the factors'" is insufficient, *Hardman*, 362 F.3d at 678, *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186 at *4, and the ALJ did not even do that. Second, the ALJ's entire credibility analysis consisted of the following: "[t]he claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment," which showed an improper approach to credibility. The ALJ should have *first* evaluated the claimant's credibility according to the above guidelines and only *then* formulated an appropriate RFC, not the other way around; instead, the ALJ apparently judged the claimant's credibility according to an already-determined RFC. *See Bjornson v. Astrue*, 2012 WL 280736 at *4-5 (7th Cir. Jan. 31, 2012) (slip op.) (in addressing nearly identical language, "[T]he passage implies that ability to work is determined first and is then used to determine the claimant's credibility. That gets things backwards. The administrative law judge based his conclusion that Bjornson can do sedentary work on his determination that she was exaggerating the severity of her headaches. Doubts about credibility were thus critical to his assessment of ability to work, yet the boilerplate implies that the determination of credibility is deferred until ability to work is assessed without regard to credibility, even though it often can't be."). Last, the ALJ erred when

---

[2] The factors to consider in assessing a claimant's credibility are: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken; (5) treatment for pain relief aside from medication; (6) any other measures the claimant uses or has used to relieve pain or other symptoms; (7) any other factors concerning functional limitations. Soc. Sec. Rul. 96-7p at 3, 1996 WL 374186 (July 2,1996).

finding that none of the claimant's physicians characterized her as disabled, since that finding is the province of the ALJ, not the claimant's physicians. *See Bibbs v. Apfel*, 3 Fed. Appx. 759, 762 (10th Cir. 2001) (noting "[T]he fact that none of the doctors may have stated directly that claimant is permanently disabled is legally irrelevant. . . .[i]t therefore would be inconsistent with the regulations to require the doctor to state such a conclusion.").

Accordingly, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis of the claimant's obesity and whether it had additional and cumulative effects when assessing her RFC. If such analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

**Conclusion**

In summary, the undersigned Magistrate Judge PROPOSES a finding by the Court that correct legal standards were not applied and that the decision of the Commissioner is therefore not supported by substantial evidence. The undersigned Magistrate Judge therefore RECOMMENDS that the Commissioner of the Social Security Administration's decision be REVERSED and the case REMANDED to the ALJ for further proceedings. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 10th day of September, 2012.

_____
Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma